UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEARY GILMORE #138763,

                Petitioner,              Case Number 2:09-CV-10110
                                                  Honorable Nancy G. Edmunds

SHIRLEE HARRY,

                Respondent.
_____/

## OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT [17] , DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS [1], AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner, Geary Gilmore, is serving a mandatory life sentence as a result of his 1974 Wayne Circuit Court convictions of two counts of first-degree felony murder. MICH. COMP. LAWS § 750.316. Petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his convictions on two grounds: (1) Petitioner was denied the effective assistance of appellate counsel when his attorney failed to raise meritorious issues during Petitioner's appeal of right; and (2) Petitioner has new evidence showing that he is actually innocent of the charges. Respondent filed a motion for summary judgment, asserting that the petition was untimely filed. The Court agrees and finds that the petition has been filed in violation of the one-year statute of limitations. The Court will also deny Petitioner a certificate of appealability.

# I. Facts and Procedural History

This case concerns the 1973 kidnaping and murder of two young boys in Detroit. Petitioner was one of three men to be tried and convicted for the crimes. The Michigan Court of Appeals summarized the trial proceedings in its opinion affirming Petitioner's convictions:

> Defendants were tried jointly and convicted by a Wayne County Circuit Court jury of murder committed in the perpetration of a kidnapping, MICH. COMP. LAWS 750.316, and kidnapping, MICH. COMP. LAWS 750.349. All three defendants were sentenced to concurrent life terms. All three defendants appeal as a matter of right.
>
> In simplified terms, the facts of this matter arose in the following order. On December 1, 1973, Keith Arnold and Gerald Kraft, aged six years and eight years respectively, disappeared in late afternoon while playing near their homes on Inverness in the city of Detroit.
>
> At 9 o'clock that evening, Roy Hillyer, a friend of the Arnold family, received a telephone call demanding $ 53,000 ransom for the return of the children. Police were notified immediately and telephone surveillance was established.
>
> Two subsequent calls were received on December 1 and December 2, 1973, one taken by Marjorie Arnold, the mother, and one by Linda Ellis, Keith Arnold's sister. Both calls demanded ransom in the same general amount. Linda Ellis later testified that the calls she received all seemed made by the same person.
>
> As ordered, Roy Hillyer went to a specified public telephone booth on December 2, 1973, where he received a call instructing him to deliver a bag with the ransom to an address on Griggs Street. The delivery was made with a dummy ransom bag. Meanwhile, police had

established a surveillance at the telephone booth. After some moments, officers observed defendant Smith come to the booth, lift the receiver and look around. Testimony also placed defendant Holloway in the immediate area of the dummy drop at the same time.

On December 4, 1973, the Wayne County Sheriff's office reported finding the boys' bodies in two fields located in Romulus, Michigan. The boys had each been shot twice in the head from the same weapon. Neighbors reported hearing the shots the previous evening about 7 o'clock.

At trial, various prosecution witnesses placed all three defendants and the two kidnapped boys in the 14th Street apartment of Fannie Johnson, sister-in-law of defendant Gilmore, on the evening of December 1, 1973. The two boys remained there until December 3, 1973. At least one of the defendants was there at all times during this period. On the morning after the boys' bodies were discovered, police found defendant Gilmore at an apartment on Schaeffer Road and placed him under arrest. Defendant Smith was arrested on December 4, 1973 in the company of an acquaintance, Lucinda Prewitt. Defendant Holloway voluntarily surrendered himself to police on December 5, 1973.

*People v. Smith*, 73 Mich. App. 463, 466-467 (1977).

In addition to this evidence, Petitioner presented witnesses in his defense. Defense witnesses testified that Petitioner spent the afternoon of December 1, 1973, with his mother-in-law, Ester Johnson, shopping. In the evening, he had his car repaired and stayed at the repair shop, and that night he spent time with his brother and his brother's girlfriend. Petitioner testified in his own defense that while he was at his apartment on the evening of December 1, 1973, Gary Bracefull and another man he did not know arrived at his apartment with two boys. Bracefull asked for a gun, but

Petitioner refused. The two men and boys left his apartment around 8:30 p.m.

Following his conviction, Petitioner obtained appellate counsel who filed an appeal by right. Petitioner's appellate brief raised five claims: (1) the trial court erred in refusing to sever Petitioner's trial; (2) the trial court erred in admitted evidence that Gary Bracefull was killed with the same gun used to kill the boys; (3) the prosecutor committed misconduct; (4) the trial court erred in admitting voice-print evidence from telephone calls made demanding ransom money; and (5) the search warrant for Petitioner's residence was invalid. The Michigan Court of Appeals rejected these claims and affirmed Petitioner's convictions. *Id.* Relevant to the present petition is Petitioner's second appellate claim. At trial, Petitioner's theory was that Gary Bracefull was responsible for the crimes instead of him. *See Gilmore v. Koehler*, 709 F.2d 1502, 1983 U.S. App. LEXIS 13430,*1 (6th Cir. Mich. 1983). Petitioner's new evidence of his innocence includes an affidavit that purports to further connect Bracefull with the crime.

Petitioner appealed the decision of the court of appeals, but on November 23, 1977, the Michigan Supreme Court denied leave to appeal. *People v. Gilmore*, 402 Mich. 803 (1977). Sometime in 1982 the trial court vacated Petitioner's kidnapping convictions on double jeopardy grounds.

Petitioner then filed a petition for writ of habeas corpus in the United States

District Court for the Western District of Michigan. On April 28, 1982, the Court denied the petition. *Gilmore v. Koehler*, Case No. M78-12 CA 2, (1982). Petitioner appealed this decision , but on February 9, 1983, the Sixth Circuit Court of Appeals affirmed. *Gilmore*, 709 F.2d at 1502. On May 23, 1983, the United States Supreme Court denied a petition for certiorari. *Gilmore v. Koehler*, 461 U.S. 944 (1983).

On February 2, 1989, Petitioner was transferred to a different correctional facility. During the transfer a dispute arose regarding the amount of personal possessions Petitioner would be permitted to bring to the new facility. In an effort to settle the dispute, Petitioner agreed to have a footlocker containing his legal records mailed to family members. The footlocker was somehow lost by the Department of Corrections before it was mailed. Petitioner alleges that he diligently attempted to obtain new copies of the lost records but was unable to do so until October 28, 2003. Respondent does not dispute the facts regarding Petitioner's loss of his records.

On April 8, 2004, Petitioner filed a motion for relief from judgment in the trial court, raising claims not related tot the present petition. The motion was denied on October 18, 2004. Petitioner appealed this decision, but on May 4, 2006, the Michigan Court of Appeals denied leave for "failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Gilmore*, No. 265879 (Mich. Ct. App. May 4, 2006). On October 31, 2006, the Michigan Supreme

Court likewise denied relief. *People v. Gilmore*, 477 Mich. 912 (2006) (table). Petitioner filed a petition for writ of certiorari in the United States Supreme Court, but it was denied on June 11, 2007, and rehearing was denied on August 20, 2007.

On June 1, 2007, Dennis M. Elliot, serving a term of mandatory life imprisonment for his own first-degree murder conviction, signed an affidavit. The affidavit alleges that in early December of 1973 he was in a car with Gary Bracefull, Larry Lester, a woman known to him as "Star," and the two kidnapping victims. He states that they went to an apartment where they met Petitioner and his sister to buy drugs. The boys were brought into the apartment as well. Elliot saw Bracefull produce a handgun. He went outside and fired two shots. Bracefull then came back inside and threw two shell casings from the gun away. Elliot and Bracefull purchased drugs and left. Elliot states that Lester then dropped the two boys off at another house with Bracefull and Star. Rossi Maclin, a self-described "highly respected prisoner advocate," signed an affidavit on July 11, 2007, explaining how she connected Elliot with Petitioner while she was helping Elliot with his own habeas petition.

On January 31, 2008, Gilmore filed a second motion for relief from judgment in state court. The motion asserted that is was allowed because it was based on this newly discovered evidence that showed Petitioner to be innocent. He explained that according to Elliot's account, the boys were alive after they left Petitioner's apartment

and went to a house with Bracefull and Star.

While that motion was pending, in March of 2008, Gilmore filed an application with the Sixth Circuit seeking permission to file a second habeas petition, again referring to this new evidence. On November 12, 2008, the Sixth Circuit entered an order allowing Gilmore to file a second or successive habeas petition. On January 9, 2009, Gilmore filed the instant case and a motion to stay while he completed exhaustion of his claims in the state courts. On August 18, 2009, this Court granted Petitioner's motion to stay.

Meanwhile, in the state courts, on September 23, 2008, the trial court denied the motion for relief from judgment. Petitioner appealed this order, and on January 29, 2010, the Michigan Supreme Court remanded the case to the trial court to decide a motion to disqualify that it had not addressed. *People v. Gilmore*, 485 Mich. 1059 (2010) (table).

On May 27, 2010, the trial court entered an order disqualifying itself, and the case was reassigned to a different judge. On June 3, 2011, the new judge issued an opinion and order denying Petitioner's second amended motion for relief from judgment, citing Michigan Court Rule 6.502(G), which prohibits a defendant from filing a successive post-conviction motion unless there has been a retroactive change in the law or the defendant has newly discovered evidence.

Petitioner appealed this decision, but on October 28, 2011, the Michigan Court of Appeals dismissed the appeal "for lack of jurisdiction" citing Rule 6.502(G). *People v. Gilmore*, No. 306437 (Mich. Ct. App. Oct. 28, 2011). Petitioner again appealed, but on July 24, 2012, the Michigan Supreme Court denied an application "because the defendant's motion for relief from judgment is prohibited by Michigan Court Rule 6.502(G)." *People v. Gilmore*, 492 Mich. 853 (2012) (table). The court denied reconsideration on September 24, 2012. *People v. Gilmore*, 493 Mich. 859 (2012).

Having exhausted his state court remedies, on December 5, 2012, Petitioner moved to reopen this action, and the motion was granted on December 12, 2012.

## II. Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sanders v. Freeman*, 221 F. 3d 846, 851 (6th Cir. 2000)(quoting FED. R. CIV. P. 56(c). To defeat a motion for summary judgment, the non-moving party must set forth specific facts sufficient to show that a reasonable factfinder could return a verdict in his favor. *Id.* The summary judgment rule applies to habeas proceedings. See *Redmond v. Jackson*, 295 F. Supp. 2d 767, 770 (E.D.

Mich. 2003).

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a one year statute of limitations applies to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court. The one year statute of limitation runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A petition for writ of habeas corpus must be dismissed where it has not been filed within the one year statute of limitations. See *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1187 (E.D. Mich. 2001).

As an initial matter, the Court must determine the latest of the four possible starting points for limitations period under §2244(d)(1)(A)-(D). The first option looks

at the date on which Petitioner's conviction became final. Here, however, because Petitioner's conviction became decades prior to the enactment of the AEDPA on April 24, 1996, under this provision, Petitioner had one year from the effective date of the Act, or until April 24, 1997, to file his habeas application. See *McClendon v. Sherman*, 329 F.3d 490, 494-95 (6th Cir. 2003); *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002).

The second option looks to the date on which any State impediment to filing the habeas petition was removed. Petitioner alleges that such an impediment occurred when the Michigan Department of Corrections lost his legal papers in 1989. Petitioner has attached to his various pleadings numerous exhibits supporting this claim, and Respondent does not oppose Petitioner's proffered facts regarding the loss of his records or his efforts at recovery. Nor does Respondent oppose the argument that the loss of records was attributable to the State. Under this provision, the limitations period would have started to run on October 28, 2003, the date on which Petitioner obtained new copies of his records.

Petitioner does not assert that the third option–the date on which a new constitutional right asserted in his petitioner was recognized by the Supreme Court–applies to this case.

The fourth option concerns the date on which the factual predicate of any of the

claims presented could have been discovered through the exercise of due diligence. Petitioner argues that his claims are based on the newly-discovered evidence proffered by Dennis M. Elliot, who signed his affidavit on June 1, 2007.

Accordingly, at best for Petitioner, the latest starting point for statute of limitations is June 1, 2007. This means that Petitioner had one year from that day, or until June 1, 2008, to file his petition. His petition was not signed, however, until January 5, 2009, some seven months after the limitations period expired.

Petitioner has three responses: (1) the limitations period was tolled by his second state post-conviction review proceeding; (2) he filed his motion for authorization to file his habeas petition within a year after he obtained his new evidence; and (3) he is actually innocent, and therefore the limitations period does not apply to his case.

First, Petitioner argues that the limitations period was tolled by the filing of his second motion for relief from judgment on January 31, 2008, and that the period continued tolling though the time he filed his petitioner because it remained pending in the state courts until the Michigan Supreme Court denied his motion for reconsideration on September 24, 2012.

Petitioner's second state post-conviction relief proceeding, however, did not toll the one-year period. An application for state post-conviction relief must be "properly

filed" in order to trigger the tolling provisions of 28 U.S.C. § 2244(d)(2). Under Michigan Court Rule 6.502(G), a criminal defendant in Michigan can typically only file one motion for relief from judgment concerning a conviction. The rule allows for the filing of a second or subsequent motion only based upon a retroactive change in the law that occurred after the first motion was filed or a claim of new evidence that was not discovered before the first motion, but apparently the state court's found that Petitioner's new evidence did not satisfy this exception. Petitioner's second state post-conviction review proceeding was ultimately denied by the state appellate courts pursuant to Rule 6.502(G). It was therefore not "properly filed" and did not serve to toll the one-year limitations period under 28 U.S.C. § 2244(d)(2). See *Williams v. Birkett*, 670 F.3d 729, 733-36 (6th Cir. 2012) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) and ruling that a Michigan prisoner's second motion for relief from judgment which was denied pursuant to Michigan Court Rule 6.502(G) was not "properly filed" and did not toll the one-year limitation period); *Geno v. Metrish*, 393 Fed. Appx. 299, 300 n. 1 (6th Cir. 2010); *Rodriguez v. McQuidgen*, No. 08-CV-13263, 2009 WL 2742004, *8 (E.D. Mich. Aug. 25, 2009). Accordingly, the limitations period continued to run during the time in which he attempted to pursue a second round of post-conviction relief in the state courts.

Next, Petitioner notes that he filed his motion to authorize the filing of his

second federal habeas petition in the Sixth Circuit on March 8, 2008, within a year of receiving Elliot's affidavit. Petitioner suggests that the motion for authorization to file the second habeas petition constituted the starting point for this habeas action and thus acted to stop the limitations period. At least one federal appellate court, however, has held that a habeas petitioner's motion for authorization to file a successive habeas petition pursuant to 28 U.S.C. § 2244(b)(3)(A) was not itself an application for writ of habeas corpus and therefore did not satisfy the requirements of the AEDPA's one year statute of limitations. See *Pierce v. Ludwick*, 2009 U.S. Dist. LEXIS 18313, 8-9 ( E.D. Mich. Mar. 10, 2009) (citing *Fierro v. Cockrell*, 294 F. 3d 674, 680 (5th Cir. 2002)). As the Fifth Circuit correctly noted in *Fierro*, a motion for authorization to file a second or successive habeas petition is merely a preliminary motion that does not itself initiate habeas proceedings. The plain language of the statute states that the limitations period applies to "an application for a writ of habeas corpus." § 2244(d)(1). Thus, preliminary filings do not satisfy the time requirements. See *Woodford v. Garceau*, 538 U.S. 202, 207 (2003) (AEDPA applied to case because Petitioner had only motion for stay of execution and motion for appointment of counsel but not an application for habeas relief on date AEDPA became effective). With reasonable diligence, Petitioner could have avoided this difficulty by either filing his motion for authorization earlier than he did or filing a "protective petition" in this

Court earlier than he did. See *Pace v. DiGuglielmo*, 544 U.S. 408, 416-417 (2005).

Lastly, Petitioner argues that his petition is not subject to the statute of limitations at all because he is actually innocent. The AEDPA statute of limitations is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). A petitioner may be eligible for equitable tolling if he demonstrates a credible claim of actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice. *McQuiggin v. Perkins*, No. 12-126, 185 L. Ed. 2d 1019, 2013 U.S. LEXIS 4068 (S. Ct. May 28, 2013); *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005). Because equitable tolling is used "sparingly" by the federal courts, the party seeking to toll the limitations period bears the burden of proving an entitlement to it. "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). To satisfy the standard, a petitioner must present "'new reliable evidence.'" *House v. Bell*, 547 U.S. 518, 537 (2006). Based on all the evidence, both old and new, "the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would

do.'" *Id*. at 538 (citation omitted). "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id*.

Petitioner has not met the exacting standard to show that he has a meritorious actual-innocence gateway claim. The prosecution's case was built on the testimony of six witnesses, all of whom essentially testified to seeing Petitioner and his two co-defendants come and go from Petitioner's apartment with the victims. Several of the witnesses also heard Petitioner make various incriminating statements after reading newspaper articles about the murders. Additionally, shell casings identified with the murder weapon were found in Petitioner's apartment, along with a button from one of the victim's clothing and the victims' fingerprints. Lastly, Petitioner's two co-defendants were arrested in the vicinity of the phoney ransom drop.

The defense theory at trial was that Bracefull was responsible for the crime. Petitioner presented several alibi witnesses who testified that they were with Petitioner during the weekend in question. Additionally, Petitioner's sister testified that she was at Petitioner's apartment when Bracefull and an unidentified man came over with the victims. Petitioner testified to the same account of Bracefull's visit with the victims.

Petitioner's new evidence of innocence consists of an affidavit from Dennis M. Elliot. Elliott claims admits that he was the unknown man who came to Petitioner's

apartment with Bracefull and the victims. He states that two other individuals involved in the crime, Larry Lester and Star, remained in the car. Elliott claims that after the murders Larry Lester warned him to stay quiet or he would end up like Bracefull, who was killed with the same gun that killed the victims. Accordingly, Petitioner's new evidence is consistent with the evidence that was presented at trial by the defense.

Petitioner's new evidence falls far short, however, of establishing that "no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt." First, Elliott is an inmate serving a life sentence for murder. Long-delayed statements such as his are viewed with extreme suspicion. *See Milton v. Secretary, Dep't of Corr.*, 347 F. App'x 528, 531-32 (11th Cir. 2009) (affidavits from fellow inmates and family members created after trial are not sufficiently reliable evidence to support a claim of actual innocence); *Mendez v. Graham*, No. 11-CV-5492, 2012 U.S. Dist. LEXIS 179523, 2012 WL 6594456, *11-12 (E.D.N.Y. Dec. 18, 2012) (finding that fellow inmate's affidavit, executed after meeting habeas petitioner in prison, and containing confession to petitioner's crime, was unreliable); *Torres v. Graham*, No. 06-CV-508, 2009 WL 4730313, *4 n. 8 (W.D.N.Y. Dec. 5, 2009) (finding that affidavits from fellow inmates who were supposedly present at the shooting and alleged that petitioner was not the shooter were unreliable); *see also Herrera*, 506 U.S. at 423 ("It seems that, when a prisoner's life is at stake, he often can find someone new to vouch

for him").

Next, the new evidence does not substantially change the evidentiary profile of the case. The trial would still amount to a credibility contest between the prosecution witnesses, who identified Petitioner and his two co-defendants as the perpetrators of the crime, versus Petitioner, his sister, and Elliot, who identify Bracefull, Lester, and Starr as the perpetrators. The addition of one witness to Petitioner's side of the ledger would not compel every reasonable juror to acquit.

Lastly, while the defense theory can account for the bullet casings, button, and fingerprints found in Petitioner's apartment, it does not account for the fact that Petitioner's two co-defendants, Holloway and Smith, were found at the location of the fake ransom drop instead of Lester, Bracefull, or Star, the supposed true perpetrators. Accordingly, Petitioner has not demonstrated that he is actually innocent such as to excuse the untimeliness of his petition.

The petition will therefore be dismissed as untimely under 28 U.S.C. § 2244(d).

### III. Conclusion

Before Petitioner may appeal, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the

substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id*. Having undertaken the requisite review, the court concludes that jurists of reason could not find the court's procedural ruling that the petition is untimely debatable.

## IV. Order

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

        s/Nancy G. Edmunds  
        Nancy G. Edmunds  
        United States District Judge

Dated: June 26, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 26, 2013, by electronic and/or ordinary mail.

        s/Johnetta M. Curry-Williams  
        Case Manager  
        Acting in the Absence of Carol Hemeyer