UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEARY GILMORE,

                              Petitioner,              Case No.   2:09-cv-10110
                                                        Hon. Nancy G. Edmunds

v.

SHIRLEE HARRY

                              Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Geary Gilmore is serving a mandatory life sentence for his 1974 Wayne Circuit Court jury trial conviction of two counts of first-degree murder. MICH. COMP. LAWS § 750.316. The petition raises two claims: (1) Petitioner was denied the effective assistance of counsel when Petitioner's appellate attorney failed to raise claims on direct appeal that were clearly stronger than the claims that were presented to the Michigan Court of Appeals, and (2) newly discovered evidence demonstrates that Petitioner is actually innocent. The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability, but it will grant Petitioner permission to proceed on appeal in forma pauperis.

I. Background

This action arises out of the abduction and murder of two young boys, Gerald Kraft and Keith Arnold, in early December of 1973. Petitioner was tried jointly with co-defendants Byron Smith and Jerome Holloway. The Michigan Court of Appeals summarized the trial

evidence in its consolidated opinion affirming the thee defendants' convictions. This recitation of the evidence is presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

In simplified terms, the facts of this matter arose in the following order. On December 1, 1973, Keith Arnold and Gerald Kraft, aged six years and eight years respectively, disappeared in late afternoon while playing near their homes on Inverness in the city of Detroit.

At 9:00 o'clock that evening, Roy Hillyer, a friend of the Arnold family, received a telephone call demanding fifty-three thousand dollars ransom for the return of the children. Police were notified immediately and telephone surveillance was established.

Two subsequent calls were received on December 1 and December 2, 1973, one taken by Marjorie Arnold, the mother, and one by Linda Ellis, Keith Arnold's sister. Both calls demanded ransom in the same general amount. Linda Ellis later testified that the calls she received all seemed made by the same person.

As ordered, Roy Hillyer went to a specified public telephone booth on December 2, 1973, where he received a call instructing him to deliver a bag with the ransom to an address on Griggs Street. The delivery was made with a dummy ransom bag. Meanwhile, police had established surveillance at the telephone booth. After some moments, officers observed defendant Smith come to the booth, lift the receiver and look around. Testimony also placed defendant Holloway in the immediate area of the dummy drop at the same time.

On December 4, 1973, the Wayne County Sheriff's office reported finding the boys' bodies in two fields located in Romulus, Michigan. The boys had each been shot twice in the head from the same weapon. Neighbors reported hearing the shots the previous evening about 7:00 o'clock.

At trial, various prosecution witnesses placed all three defendants and the two kidnapped boys in the 14th Street apartment of Fannie Johnson, sister-in-law of defendant Gilmore, on the evening of December 1, 1973. The two boys remained there until December 3, 1973. At least one of the defendants was there at all times during this period. On the morning after the boys' bodies were discovered, police found defendant Gilmore at an apartment on Schaeffer Road and placed him under arrest. Defendant Smith was arrested on December 4, 1973 in the company of an acquaintance, Lucinda Prewitt. Defendant Holloway voluntarily surrendered himself to police

2

on December 5, 1973.

*People v. Gilmore*, 73 Mich. App.  463, 466–467 (1977).

The statement of facts appearing in the amended petition contains additional detail regarding Petitioner's trial. See Dkt. 6, at Pg ID 37-44, 89-91. In addition to the facts recited by the Michigan Court of Appeals, the prosecutor's case against Petitioner rested in large part on five witnesses who testified that they saw him with his two co-defendants and the two victims at his apartment over the weekend of December 1, 1973. Fannie Johnson (who was Petitioner's sister-in-law and lived at the apartment), Jacqueline Wesley, Denise James, Carol Payne, and Lucinda Pruwitt all testified that they were at Petitioner's apartment during the weekend. They all saw the three defendants with the boys at the apartment during various times during the weekend. Pruwitt testified that at some point on Sunday December 2nd, the three defendants left the apartment with the two boys in her car. She heard Petitioner tell the boys that they were going home. The three defendants arrived back at the apartment about an hour and one-half later without the two boys.

A subsequent search of Petitioner's apartment by the police revealed two .32 caliber cartridges that matched the casings found next to one of the boy's bodies. Police also found a button from an article of clothing from one of the victims. Finally, latent fingerprints from both victims were found in the apartment.

Petitioner presented defense witnesses Ester Johnson, Clarence Fields, Harry Gilmore, and Deborah Lowery, who all testified that they visited Petitioner's apartment during various stretches of the weekend. These witnesses contradicted the prosecution witnesses' testimony about the two co-defendants presence at the apartment as well as the testimony that the boys stayed overnight. Another witness testified that Petitioner was at

3

his body shop for car repairs on the evening of December 1, 1973.

Petitioner's sister testified that Gary Braceful and another man arrived at the apartment on Saturday evening with the two boys, but they were gone by 10:00 pm. A few of the prosecutor's witnesses also testified that they saw Braceful at Petitioner's apartment during the weekend.

Petitioner testified that Braceful and another man came to his apartment with two kids on Saturday evening. Braceful asked Petitioner for a gun, Petitioner refused, and Braceful left with the boys around 8:30 pm. Petitioner also testified that his two co-defendants visited his apartment during the weekend.

The prosecutor presented evidence in its rebuttal case that Braceful was murdered a few days after the boys were shot, and he was killed with the same gun that was used to kill the boys.

Following his conviction, Petitioner obtained appellate counsel who filed an appeal by right. Petitioner's appellate brief raised five claims: 1) the trial court erred in refusing to sever Petitioner's trial from Smith and Holloway's trial, 2) the trial court erred in admitting evidence that Gary Braceful was killed with the same gun used to kill the boys, 3) the prosecutor committed misconduct during closing argument, 4) the trial court erred in admitting voice-print evidence from the ransom demand calls, and 5) the search warrant for Petitioner's residence was invalid because is was based on previous illegal activity. *Gilmore*, *supra*. The Michigan Court of Appeals rejected these claims and affirmed Petitioner's convictions. Petitioner appealed the decision, but the Michigan Supreme Court denied leave to appeal. *People v. Gilmore*, 402 Mich. 803 (1977) (table). Petitioner then unsuccessfully pursued federal habeas relief. See *Gilmore v. Koehler*, 709 F.2d 1502, 1983

4

U.S. App.  LEXIS 13430 (6th Cir. 1983).

On April 8, 2004, Petitioner filed a motion for relief from judgment in the trial court asserting among a host of other claims that he was denied the effective assistance of appellate counsel. See Dkt. 54, Exhibit A. Specifically, Petitioner claimed that his appellate counsel was ineffective for failing to raise the following claims: 1) the trial court failed to swear the jurors, 2) the trial court made prejudicial comments, 3) the trial court failed to properly instruct the jury on his alibi defense, 4) the trial court failed to allow Petitioner to examine a document used to refresh the recollection of a witness, 5) the trial court erroneously admitted a non-testifying co-defendant's statement, 6) the prosecutor offered perjured testimony at trial, 7)  the trial court allowed admission of evidence that Petitioner was poor and unemployed, 8) the trial court allowed admission of Petitioner's silence after his arrest, and 9) Petitioner's Fourth Amendment rights were violated. Id., Exhibit A, p. 6.

On October 18, 2004, the trial court denied Petitioner's motion for relief from judgment. See Dkt. 47-3. In pertinent part, the trial court found:

> With regard to the claim of ineffective assistance of appellate counsel the defendant must show that a reasonable appellate attorney could not have concluded that the issues were not worthy of mention on appeal. *People v. Reed*, 449 Mich. 375 [(1995)]. The defendant has not demonstrated that his appellate counsel's performance fell below an objective standard of reasonableness as required.

Id, p. 25.

Petitioner appealed this decision, but the Michigan Court of Appeals denied leave for "failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Gilmore*, No. 265879 (Mich. Ct. App. May 4, 2006). The Michigan Supreme Court denied relief under the same court rule. *People v. Gilmore*, 477 Mich. 912

(2006) (table).

On June 1, 2007, Dennis M. Elliot, serving a term of mandatory life imprisonment for his own first-degree murder conviction, signed an affidavit. The affidavit alleges that in early December of 1973 he was in a car with Gary Braceful, Larry Lester, a woman known to him as "Star," and the two kidnaping victims. He states that they went to an apartment where they met Petitioner and his sister to buy drugs. The boys were brought into the apartment as well. Elliot saw Braceful produce a handgun. He went outside and fired two shots. Braceful then came back inside and threw away two shell casings from the gun. Elliot and Braceful purchased drugs and left. Lester then dropped the two boys off at another house with Braceful and Star. Rossi Maclin, a prisoner advocate, signed an affidavit on July 11, 2007, explaining how she connected Elliot with Petitioner while she was helping Elliot with his own habeas petition.

On January 31, 2008, Petitioner then filed a second motion for relief from judgment in the state trial court relying on this newly discovered evidence. While that motion was pending, Petitioner sought and received permission from the Sixth Circuit to file a second federal habeas petition. On January 9, 2009, Gilmore filed the instant case and a motion to hold the case in abeyance while he completed exhaustion of his claims in the state courts. On August 18, 2009, this Court granted Petitioner's motion to stay.

The trial court denied Petitioner's second motion for relief from Judgment on June 3, 2011. Dkt. 47-11. The opinion cited Michigan Court Rule 6.502(G), which generally prohibits a defendant from filing a successive post-conviction motion. The lengthy opinion also adopted almost verbatim a large part of the prosecutor's answer to Petitioner's 2004 motion for relief from judgment,  discussing and rejecting on the merits seven of the nine

6

claims that Petitioner asserts his appellate counsel should have raised on direct appeal.

Petitioner appealed this decision, but the Michigan Court of Appeals dismissed the appeal "for lack of jurisdiction" citing Rule 6.502(G). *People v. Gilmore*, No. 306437 (Mich. Ct. App. Oct. 28, 2011). Petitioner again appealed, but the Michigan Supreme Court denied an application "because the defendant's motion for relief from judgment is prohibited by Michigan Court Rule 6.502(G)." *People v. Gilmore*, 492 Mich. 853 (2012) (table).

On December 12, 2012, the case was reopened. Respondent filed a motion for summary judgment, asserting that the petition was filed after expiration of the one-year statute of limitations. The Court granted the motion, but the Sixth Circuit reversed and remanded for further proceedings. *Gilmore v Berghuis*, No. 13-2008 (6th Cir. Jan. 30, 2015). The case is now ready for decision.

II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is bared under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

A. Procedural Defenses

Respondent argues that Petitioner's ineffective assistance of appellate counsel claim is procedurally barred from review because the claim was raised in his second state post-conviction review proceeding and the state courts denied relief because Petitioner was prohibited from filing the proceeding under Michigan Court Rule 6.508(G). Petitioner rejoins by noting that he presented the claim to the state courts in his first post-conviction review proceeding as well, and that his claim is therefore not defaulted for the reasons given by Respondent.

8

The Court need not resolve this dispute, and it will proceed directly to the merits of Petitioner's claim without consideration of whether it is procedurally defaulted because the claim lacks substantive merit and a procedural-default analysis "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).

Respondent also asserts that Petitioner's claim fails because at the time of his direct appeal the Supreme Court had not yet recognized a right to the effective assistance of counsel on direct appeal. See *Teague v. Lane*, 489 U.S. 288 (1989) (habeas relief is unavailable for claims based on new rules of constitutional law). The Supreme Court did not explicitly recognize the right to the effective assistance of counsel on appeal until it decided *Evitts v. Lucey*, 469 U.S. 387 (1985). However, the Court characterized it's ruling as "hardly novel," and discussed how the result was dictated by existing precedent. *Id.*, at 396-397. The Court will therefore assume for purposes of this opinion that the right to effective assistance of counsel on direct appeal existed at the time of Petitioner's direct appeal.

B. Ineffective Assistance of Appellate Counsel

Petitioner claims that he was deprived of the effective assistance of appellate counsel during his direct appeal because his counsel did not raise nine claims that were clearly stronger than the five claims that were presented.

As an initial matter, Petitioner asserts that his claim is not subject to the limitations of review set forth in § 2254(d) because it was not adjudicated on the merits by the state courts. See Dkt. 6, at 52. This assertion is incorrect. As noted above, the trial court denied Petitioner's ineffective assistance of appellate counsel claim on the merits when it denied

his first motion for relief from judgment.[1] The trial court found that "defendant has not demonstrated that his appellate counsel's performance fell below an objective standard of reasonableness." Dkt. 47-3, at 25. This brief decision by the trial court constitutes an adjudication on the merits of Petitioner's claim that is entitled to the deference afforded by § 2254(d).[2] Petitioner's claim is therefore subject to the limitations of review imposed by § 2254(d).

Petitioner seeks an evidentiary hearing to support his claim. In *Cullen v. Pinholster*, 563 U.S. 170 (2011), the Supreme Court held that where a habeas claim has been decided on the merits in state court, a federal court's review under 28 U.S.C. § 2254(d)(1)—whether the state court determination was contrary to or an unreasonable application of established federal law—must be confined to the record that was before the state court. 563 U.S. at 181-82. The *Pinholster* Court specifically found that the District Court should not have held an evidentiary hearing regarding the petitioner's claims until after the Court determined that the petition survived review under § 2254(d)(1). Here, contrary to Petitioner's argument, the

---

[1] The subsequent decisions by the state appellate courts denying relief under Michigan Court Rule 6.508(D) are "unexplained decisions." See *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claim. *Id.* Here, that is the brief decision on the merits by the trial court. Also relevant is the trial court's opinion denying Petitioner's second motion for relief from judgment which discusses the merits of seven of the claims Petitioner asserts his appellate counsel failed to raise. See Dkt. 47-11, at 4-41.

[2] Because the trial court only resolved Petitioner's claim with respect to the deficient performance prong of the *Strickland* test, that is the only portion of the claim that is entitled to deference. See *Porter v. McCollum*, 558 U.S. 30, 39 (2009) (per curiam) (reviewing deficiency de novo when state court denied claim entirely on prejudice); *Rayner v. Mills*, 685 F.3d 631, 638 (6th Cir. 2012) ("When a state court relied only on one *Strickland* prong to adjudicate an ineffective assistance of counsel claim, AEDPA deference does not apply to review of the *Strickland* prong not relied upon by the state court.").

state trial court did adjudicate Petitioner's claims on the merits. Therefore, this Court is limited to the record before the state court.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound strategy. *Id.* at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* The *Strickland* standard applies to claims of ineffective assistance of appellate counsel. See *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

It is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. See *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "Generally, only when ignored issues are clearly stronger than

11

those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Petitioner identifies nine claims that his appellate counsel was ineffective for failing to raise during his direct appeal: 1) the jury was never properly sworn in, 2) the trial court made improper remarks, 3) the trial court failed to allow Petitioner to inspect a document used to refresh the recollection of a witness, 4) the admission of co-defendant Holloway's statements violated Petitioner's confrontation rights, 5) the prosecutor presented the perjured testimony of Carol Payne, 6) the trial court allowed admission of evidence of Petitioner's poverty and unemployment, 7) the trial court allowed admission of evidence that Petitioner remained silent when he was arrested, 8) Petitioner's rights under the Fourth Amendment were denied when the police committed perjury to obtain a search warrant, and 9) the trial court erroneously instructed the jury regarding Petitioner's alibi defense. Dkt. 10, at 40-77. The Court finds that none of these claims is clearly stronger than the ones raised by appellate counsel, and therefore Petitioner's appellate counsel did not perform deficiently. More to the point, the decision by the state court rejecting this claim on the merits did not fall beyond any possibility for fairminded disagreement. Therefore, Petitioner has failed to demonstrate entitlement to relief under § 2254(d). *Harrington*, 562 U.S. at 103.

1.

First, Petitioner asserts that jury was never administered an oath, and this failure presented a "dead bang winner" for appeal. The prosecutor's response to Petitioner's first motion for summary judgment conceded that the transcript does not reflect that the oath was administered, but it noted that during trial the prosecutor, defense counsel, and the trial court all referred to the oath that the jurors had taken. The prosecutor also noted that the

trial court case file no longer exists, but at the time of Petitioner's direct appeal, it may have contained a notation from the court clerk that the jury was sworn.

"The swearing of the jury generally involves a matter of state law that is not cognizable in federal habeas review." *Calloway v. McQuiggin*, No. 2:11-CV-10005, 2013 U.S. Dist. LEXIS 127237, 2013 WL 4784412, at *4 (E.D. Mich. Sept. 6, 2013). Under state law, a clerk of the court's note indicating that a jury was sworn is sufficient to establish that the jury was properly sworn despite the absence of such a notation to that effect in the trial transcripts. See *People v. Jackson*, 100 Mich. App.  146, 153-54 (1980) ("The only indication that the jury was sworn is found in the notes taken by the clerk of the court."); *People v. Livingston*, 57 Mich. App. 726, 734 (1975) ("Though the transcript does not indicate that the jury was ever sworn, the work sheet for the clerk of the Recorder's Court dated May 22, 1973, an official part of the lower court file, states that the jury was indeed sworn on that date.").

There is no indication in the record what information appellate counsel had or did not have regarding the swearing in of the jury. *Jackson* and *Livingston* support the position taken by the prosecutor that during this time period the swearing in of the jury could have been noted in the trial court's case file but not in the transcript. Furthermore, the references at trial by defense counsel, the prosecutor, and the trial court to the jury having taken the oath, suggests that the oath was administered.

Absent conclusive evidence, *Strickland's* deferential standard and AEDPA's doubly deferential standard require a finding that counsel's performance was not deficient. *Beuke v. Houk*, 537 F.3d 618, 644 (6th Cir. 2008) (rejecting ineffective-assistance claim on habeas review where petitioner "ask[ed] this court to assume," based on "sheer speculation," that

his trial counsel did not perform an adequate mitigation investigation and where petitioner failed to provide "enough evidence to confirm or deny that conclusion"). There simply is no evidence, and due to the passage of time none can ever be developed, as to whether appellate counsel investigated this issue and reviewed the trial court's case file.  The burden to demonstrate ineffective assistance of counsel falls on Petitioner, and he had not done so.

Petitioner asserts that waiver of a fundamental right, such as the right to a properly sworn jury, cannot be inferred from a silent record. See, e.g., *Carnley v. Cochran*, 369 U.S. 506 (1962). But this is not an issue of the waiver of a fundamental right. The prosecutor never argued that Petitioner waived his right to have a properly sworn jury. The argument presented by the prosecutor was that the jury may have been sworn without it ever having appeared in the trial transcript. Petitioner has offered this Court no evidence from anyone who was present in the courtroom during his trial to support his allegation that the jury was never given its oath. The suggestion in *Jackson* and *Livingston* that the jury's oath did not always appear in the transcript during this time period provides support that this claim was not as obvious as Petitioner asserts. There is therefore no basis in the record to conclude that this claim was clearly stronger than the claims that were raised on direct appeal, and appellate counsel did not perform deficiently by omitting it.

2.

Petitioner next argues that the trial court made improper remarks undermining defense counsel and his theory of defense. A defendant has a right to a trial before an impartial judge. *Tumey v. Ohio*, 273 U.S. 510, 535 (1927). But comments that do not exhibit favoritism or antagonism for a party are insufficient to establish judicial bias. *See Liteky v.*

14

*United States*, 510 U.S. 540, 555 (1994). Indeed, "expressions of impatience, dissatisfaction, annoyance, and even anger" are insufficient to show bias. *Id.* at 555-56.

Petitioner quotes multiple instances in the trial record where the trial court made comments or rulings expressing what appears to be exasperation or annoyance at objections or lines of questioning by defense counsel. The prosecutor's response to Petitioner's first motion for relief from judgment noted that the trial transcript consists of 4000 pages, and that the challenged remarks made up a very small part of the record. The prosecutor then went on to examine each of the challenged comments, and showed how viewed in context the rulings were reasonable and did not indicate any bias against Petitioner or his counsel. See Dkt. 47-2, at 53-66. Given the standard for adjudicating judicial bias claims, it is easy to see why Petitioner's appellate counsel would forgo such a claim in light of the facts even as set-forth by Petitioner. This claim is not clearly stronger than the ones raised on direct appeal.

3.

Petitioner next asserts that the trial court erred in failing to allow him to examine a document used to refresh the recollection of prosecution witness Payne. The trial court summarized the factual basis underlying this claim. The prosecutor met with Payne prior to trial, and during the meeting she made statements implicating Petitioner. The prosecutor made notes of her statements and included it in his outline for her direct examination. After the prosecutor used one page of his notes to refresh Payne's recollection, the trial court sustained the prosecutor's objection to Petitioner's request to examine the entire document. According to the trial court, Petitioner was allowed to examine the page used to refresh the recollection of the witness. See Dkt. 47-11, at 18-21. Petitioner vehemently disagrees that

15

his counsel was permitted to examine the page, but he has not pointed to clear and convincing evidence that the recitation by the state trial court of what occurred is incorrect. See U.S.C. § 2254(e)(1). Petitioner has therefore failed to show that he had a strong claim of error based on the trial court's decision to not allow his trial counsel to see portions of the prosecutor's trial materials that were not used to refresh the witness's recollection. Appellate counsel was not ineffective for failing to raise this claim during Petitioner's direct appeal.

4.

Petitioner next asserts that the admission of co-defendant Holloway's statements at trial violated his rights under the Sixth Amendment Confrontation Clause because Holloway did not testify and was not subject to cross-examination.

Again, the trial court recounted the facts underlying this claim. Dkt. 47-11, at 21-25. Over Petitioner's objection, Carrol Payne testified at trial to statements Holloway made to her both at the apartment while Petitioner and Smith were present, and then to statements he made to her after the murder. Most notably, after the murder Holloway made statements lamenting what had occurred, stating: "All that blood. All that blood. Why did they do it?" Id., 24. Payne testified that Holloway did not identify who "they" referred to. Id. The trial court instructed the jury to disregard the testimony as it related to Petitioner and Smith.

In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court ruled that the admission at a joint trial of a non-testifying co-defendant's confession to police which implicates the defendant violates the Confrontation Clause even if the trial court instructs the jury not to consider the incriminating statements in determining the defendant's guilt. An exception to this rule is recognized when the co-defendant's confession is redacted.

16

*Richardson v. Marsh*, 481 U.S. 200, 211 (1987). In *Marsh*, the Court held that when the statement of a non-testifying co-defendant is not facially incriminating and the jury is given a limiting instruction, admission of the statement does not violate a defendant's right to confrontation. *Id.* at 207-09. Here, in denying Petitioner's second motion for relief from judgment, the trial court noted that Holloway's statements to Payne were not facially incriminating to Petitioner. Thus, it found that the trial court's limiting instructions were sufficient to protect Petitioner's rights. Petitioner disagrees. He claims that under *Gray v. Maryland*, 523 U.S. 185 (1998), where a co-defendant's statement creates an obvious inference to the defendant, the *Bruton* prohibition applies notwithstanding *Marsh*.

The Court need not resolve this debate because–as a predicate to an ineffective assistance of appellate counsel claim–the claim fails for a more fundamental reason. At issue are statements made by a co-defendant to a lay person in a private setting. The Supreme Court has held that the admission of non-testimonial hearsay, such as this, does not implicate the Confrontation Clause at all. See *Crawford v. Washington*, 541 U.S. 36, 61-62 (2004); *Davis v. Washington*, 547 U.S. 813, 823-26 (2006). Holloway's statements to Payne were certainly nontestimonial, and so under current law, the admission of his statements did not implicate Petitioner's confrontation rights.

In reviewing an ineffective assistance of counsel claim, to determine whether a defendant has been prejudiced by his counsel's conduct, as opposed to whether his performance was deficient, a reviewing court looks to the current state of the law. *Lockhart v. Fretwell*, 506 U.S. 364, 373 (1993). Therefore, even assuming appellate counsel had a viable claim under then-existing law, Petitioner was not prejudiced by his counsel's failure to raise this claim because his rights under the Confrontation Clause were not violated by

the admission of this nontestimonial hearsay.

5.

Petitioner next argues that the prosecutor presented the perjured testimony of Carol Payne at trial. He asserts that Payne testified that she overheard a discussion between Petitioner and Smith regarding a newspaper article detailing evidence found near the bodies and at Petitioner's apartment. Petitioner references testimony that Payne claimed to hear Smith talk about a shell box found in the garbage disposal. Petitioner argues that this testimony was indisputably false because the details of the investigation had not been available to the newspaper at the time of the conversation.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).

The state trial court concluded that the record did not support Petitioner's claim. Dkt 47-11, at 10-18. The court summarized Payne's trial testimony, and found as false Petitioner's allegation that Payne testified that Smith read aloud the details of the investigation from the newspaper article. Id., at 17-18. The Court found that Payne merely indicated that the newspaper article prompted Smith's statements about details of the crime

18

and the evidence discovered within his own knowledge. Id. Petitioner has not shown by clear and convincing evidence that this factual determination by the trial court is incorrect. § 2254(e)(1). Because the claim is without a factual basis, appellate counsel did not perform deficiently by failing to raise it.

6.

Petitioner next argues that the trial court erroneously allowed admission of evidence of Petitioner's poverty and unemployment. Again, the trial court examined the record and determined that the alleged error amounted to "four questions during a twenty-four day trial." Dkt. 47-11, p. 25.  The court went on to note that at the time of Petitioner's trial, Michigan law had yet to hold that such evidence was inadmissible. The court found that the seminal case regarding such evidence was decided a year after trial. See *People v. Johnson*, 393 Mich. 488, 496 (1975). The trial court held that in the unique circumstances of Petitioner's case, where the motive for the crime was a financial one, the evidence of Petitioner's financial situation was admissible. Dkt. 47-11, at 27-28. Petitioner asserts that the trial court is wrong about Michigan law, and that his claim was viable even under then-existing law.

This Court, however, will not second-guess the state trial court's assessment of state evidentiary law. "[S]econd guessing evidentiary rulings is not our job . . . Federal habeas courts do not review state-court rulings on state-law questions." *Burger v. Woods*, 515 F. App'x 507, 509 (6th Cir. 2013) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). Petitioner's appellate counsel was not ineffective for failing to raise this meritless issue of state evidentiary law.

7.

Petitioner next asserts that the trial court erred in allowing admission of evidence that he remained silent when he was arrested. It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence to impeach exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976); *Griffin v. California*, 380 U.S. 609, 615 (1965). "[T]he *Doyle* rule has no application unless the defendant has remained silent and could be considered to have done so in reliance on the implied assurances of the *Miranda* warnings." *United States v. Crowder*, 719 F.2d 166, 172 (6th Cir. 1983) (en banc).

According to the trial testimony of Jacqueline Wesley, Petitioner and Wesley were in an apartment when the police knocked on the door. Petitioner saw the police through a hole in the door, and he told Wesley that Byron must have "snitched." He then threatened her with a pistol, stating "bitch, if you say one word . . . I'll kill you." Petitioner hid the pistol in a pillow. The police broke into the apartment and asked about the gun because Petitioner had an empty holster tucked in waistband, and Petitioner did not respond. Petitioner made statements to Wesley on the way to the police station, telling her not to say anything and denying that he killed the boys. Dkt. 47-11, at  31-34; Dkt. 54-1, page ID 2131-2133.

The vast majority of Petitioner's claim centers around the admission of his statements to Wesley, not to the police. *Doyle* is not implicated at all by Petitioner's statements to another civilian. The only relevant portion of the record is the testimony that Petitioner did not respond to the officer when asked about the gun. This testimony was inconsequential because the question concerned Petitioner's empty holster. It was not a reference to the murder weapon, and the parties stipulated that the gun found in the apartment with Petitioner was not the murder weapon. Dkt. 47-11, p. 36. Neither the

question nor the failure to respond had anything to do with the charged offenses.

Furthermore, Petitioner testified at trial that he told the police that he did not have anything to do with the crime. Dkt. 47-11, p. 35. Admission of his statements or lack of statements, and any related argument, was therefore proper. See *Anderson v. Charles*, 447 U.S. 404, 408 (1980). This claim was not clearly stronger than those raised by appellate counsel.

8.

Petitioner next asserts that his rights under the Fourth Amendment were denied when the police committed perjury to obtain a search warrant of his apartment under *Franks v. Delaware*, 438 U.S. 154 (1978), and other Fourth Amendment cases decided by the Supreme Court after his direct appeal. Petitioner's trial counsel raised a Fourth Amendment challenge to the search, and the court held a four-day evidentiary hearing on the claim and denied relief. Dkt. 47-11, p. 4. Petitioner's appellate counsel then raised the challenge again on direct appeal based on existing precedent, and the Michigan Court of Appeals rejected the claim. *Gilmore*, 73 Mich. App. at 472.

*Franks* was decided after Petitioner's conviction because final. Petitioner asserts that *Franks* can be applied retroactively. Even if this assertion were accepted, it does not speak to the deficiency prong, which–unlike *Fretwell*–asks a reviewing court to look at counsel's conduct at the time he acted. *Strickland*, 466 U.S. at 690. Appellate counsel did not perform deficiently by failing to raise the Fourth Amendment claim on a basis not yet available to him.

9.

Finally, Petitioner asserts that the trial court erroneously instructed the jury regarding

21

Petitioner's alibi defense, the law on aiding and abetting, and the elements of felony-murder as they existed in 1974. Petitioner fails to demonstrate that the jury instructions were erroneous. The state trial court held that under Michigan law the challenged instructions were correct. ECF 47-11, at 36-41. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The decision of the state courts on a state-law issue is binding on a federal court. See *Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (reiterating "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus'") (quoting *Bradshaw*, 546 U.S. at 76). Because the instructions were correct under state law, Petitioner cannot demonstrate that his appellate counsel performed deficiently by failing to challenge them on direct appeal.

In sum, Petitioner fails to show that his appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised in his post-conviction motions. Petitioner's appellate counsel raised multiple claims on appeal, and though they proved to be without merit, Petitioner has failed to show that any of the omitted claims were so clearly stronger that counsel rendering constitutionally ineffective assistance by omitting them.

Perhaps more to the point, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the

*Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123. Petitioner has not demonstrated that the state trial court's merits adjudication of his ineffective assistance of counsel claim was unreasonable under this deferential standard. He has therefore failed to demonstrate entitlement to relief under § 2254(d).

B. Actual Innocence

Petitioner's second claim asserts that he is actually innocent. To the extent Petitioner raises this claim to excuse any procedural default of his first claim, the claim is moot because the Court has found that claim to be without merit. To the extent that Petitioner asserts this claim as a substantive claim for relief, it is not cognizable.

An actual innocence claim does not constitute a constitutional claim in itself. See *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993), cited in *Schlup v. Delo*, 513 U.S. 298, 314 (1995). The Sixth Circuit has interpreted *Herrera v. Collins* to hold that federal courts must not make independent determinations of guilt or innocence in habeas cases. See *Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005). The function of a federal court reviewing a habeas corpus petition is to ensure that the petitioner is not imprisoned in violation of the constitution, not to correct errors of fact. *Herrera*, 506 U.S. at 400; *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that [Petitioner] is not entitled to relief under available Supreme Court

23

precedent."); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007); *Sitto v. Lafler*, 279 F. App'x 381, 381-82 (6th Cir. 2008) (affirming denial of habeas relief on similar claim).

Nevertheless, even if Petitioner's actual innocence claim were cognizable, as the Court explained in its order granting Respondent's motion for summary judgment, the claim is without merit. "[A] petitioner does not meet the threshold requirement [for proving his actual innocence] unless he persuades the district court that, in light of the new evidence, no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. To satisfy the standard, a petitioner must present "'new reliable evidence.'" *House v. Bell*, 547 U.S. 518, 537 (2006). Based on all the evidence, both old and new, "the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* at 538 (citation omitted). "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.*

Petitioner has not met this exacting standard. The prosecution's case was built on the testimony of several witnesses who testified seeing Petitioner and his two co-defendants come and go from Petitioner's apartment with the victims over the course of a weekend. One witness heard Petitioner tell the boys that they were going home when the three defendants left in her car with them, and the defendants then returned without the boys. Petitioner made incriminating statements after the crime, threatening Wesley to stay silent, and indicating that one of his co-defendants must have snitched.

The bodies were found in a field, and cartridges were found in Petitioner's garbage that matched the casings found near the bodies. A button from one victim and fingerprints from both victims were found in Petitioner's apartment. Petitioner's two co-defendants,

Smith and Holloway, were identified near a dummy ransom drop, and Holloway's voice was identified as the man calling with the ransom demands. Holloway in particular made very incriminating statements after the crime.

The defense theory at trial was that Braceful–who was murdered with the same weapon used to kill the boys–was responsible for the crime. Petitioner presented several witnesses who testified that they were with Petitioner during the weekend in question and that Petitioner's two co-defendants were not at his apartment with the boys. Petitioner's sister testified that she was at Petitioner's apartment when Braceful and an unidentified man came over with the boys. Petitioner testified to the same account, asserting that is was Braceful and an unidentified man who came over to his apartment with the victims–not his two co-defendants.

Petitioner's new evidence of innocence consists of an affidavit from Dennis M. Elliot. Elliott claims that he was the unknown man who came to Petitioner's apartment with Braceful and the victims. He states that two other individuals involved in the crime, Larry Lester and "Star," remained in the car. The new proffer also indicates that Braceful had a gun, took two practice shots outside the apartment, and then threw the shells away in Petitioner's garbage. Elliott claims that after the murders Larry Lester warned him to stay quiet or he would end up like Braceful.

Petitioner's new evidence is helpful in that it is corroborative of the trial defense that Braceful brought the boys to the apartment, and it gives an innocent account for the cartridges found in Petitioner's apartment. Petitioner's new evidence falls far short, however, of establishing that "no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt."

25

First, Elliott is an inmate serving a life sentence for murder. Long-delayed statements such as his are viewed with extreme suspicion. *See Milton v. Secretary, Dep't of Corr.*, 347 F. App'x 528, 531-32 (11th Cir. 2009) (affidavits from fellow inmates and family members created after trial are not sufficiently reliable evidence to support a claim of actual innocence); *see also Herrera*, 506 U.S. at 423 ("It seems that, when a prisoner's life is at stake, he often can find someone new to vouch for him.").

Next, the new evidence does not substantially change the evidentiary profile of the case. The trial would still have amounted to a credibility contest between the prosecution witnesses, who identified Petitioner and his two co-defendants as being the one with the victims during the relevant time-frame, versus Petitioner and  his witnesses who identified Braceful as being with the victims. The addition of one witness to Petitioner's side of the ledger would not compel every reasonable juror to acquit.

But more pointedly, the new evidence suggesting that Braceful and maybe Lester were the perpetrators fails to account for the strong evidence implicating Smith and Holloway. Setting aside Holloway's damning statements, these two were seen at the dummy ransom drop, and Holloway was identified as the caller making the ransom demands. The strong evidence that Holloway and Smith were involved in the abduction-murders very strongly corroborates the prosecution witnesses who testified that Petitioner, Holloway, and Smith were with the boys at the apartment as opposed to it being Braceful and another man who had the boys. Neither Petitioner's trial witnesses nor the new evidence account for Holloway and Smith. Petitioner has not demonstrated that no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt in light of his new evidence. Therefore, even if this claim were cognizable, the Court would find it

26

to be without merit.

The petition will therefore be denied.

### IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. Aat  At 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claims are completely devoid of merit. Therefore, the Court denies a certificate of appealability.

The Court will, however, grant permission to appeal in forma pauperis because any appeal of this decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

### V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

s/ Nancy G. Edmunds
Honorable Nancy G. Edmunds
Dated: March 30, 2016                    United States District Judge