UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEARY GILMORE,

                        Petitioner,          Case No.   2:09-cv-10110
                                                      Hon. Nancy G. Edmunds
v.

SHIRLEE HARRY

                        Respondent.
_____/

**ORDER GRANTING PETITIONER'S MOTION TO AMEND [Dkt. 62] AND DENYING PETITIONER'S MOTION TO MAKE ADDITIONAL FINDINGS [Dkt. 58]**

This is a habeas corpus case filed under 28 U.S.C. § 2254 by a state prisoner who was convicted in 1974 along with two other men of two counts of first-degree murder. The three defendants were accused of murdering two young boys after their ransom demands were not met. The Court denied the petition on March 30, 2016. Presently before the Court is Petitioner's motion to make additional findings under Rule of Civil Procedure 52(b), in which he seeks reconsideration of the Court's decision denying him habeas relief.[1]

Petitioner primarily complains that Respondent failed to file the portions of the trial record necessary for a fair review of his claims. He argues the Court erroneously relied on a statement of facts contained in the state trial court's order denying his motion for relief from judgment. Petitioner notes that the statement of facts was adopted by the trial court from purportedly biased statement of facts appearing in an earlier pleading filed by the prosecutor.

In response to the motion, Respondent filed what appears to be a complete copy of

---

[1] Petitioner also filed a motion to correct typographical errors in his Rule 52(b) motion. [Dkt. 62]. That motion will be granted.

the record from Petitioner's 1974 jury trial, which includes 40 transcript volumes, as well as a response to Petitioner's claims. See Dkts. 63 and 64. Upon review of the motion, response, and the record of the trial court proceedings, the Court finds that it was not misled by the trial court's statement of facts, 0and it correctly determined that Petitioner's claims lack merit. The motion to make additional findings will therefore be denied.

## I. Standard of Review

Federal Rule of Civil Procedure 52(b) provides that "[o]n a party's motion . . . the court may amend its findings— or make additional findings— and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59." FED. R. CIV. P. 52(b). The Court construes Petitioner's pro se pleading as also seeking an order altering or amending the Court's decision denying his petition pursuant to Rule 59(e). A motion under this rule may be granted only if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *GenCorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). The Sixth Circuit has "repeatedly held that a Rule 59(e) motion 'does not permit parties to . . . re-argue a case' and 'cannot be used to present new arguments that could have been raised prior to judgment.'" *Schellenberg v. Twp. of Bingham*, 436 F. App'x 587, 598 (6th Cir. 2011) (quoting *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008)).

## II. Discussion

A. Failure to File Trial Record

Petitioner first asserts that Respondent failed to comply with Rule 5(d)(1) of the Rules Governing Section 2254 Cases when it failed to file the trial transcripts along with its initial responsive pleading to the petition. He notes that the Court relied upon a statement

of facts contained in the trial court's order denying Petitioner's motion for relief from judgment. Petitioner asserts that the trial court's statement of facts constitutes an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2) because it adopted a purportedly inaccurate statement of facts submitted by the prosecutor in an earlier filed pleading.

In § 2254 proceedings, the state must indicate in its responsive pleading what transcripts are available and what proceedings have been recorded but not transcribed. See Rule 5(c) of the Rules Governing Section 2254. If the state fails to submit the entire record, any decision by the district court on the merits may be subject to challenge. See, e.g., *Nash v. Eberlin*, 437 F.3d 519, 523–34, 2006 FED App. 0057P (6th Cir. 2006) (vacating judgment where district court did not have complete state court transcript and review of the additional evidence was required).

When Respondent filed its initial response to the petition, it filed portions of the state appellate record, as well as some of the pleadings filed in the state courts during state post-conviction review, but it did not file any of the trial transcripts. See Dkt. 47. Most of Petitioner's claims, not surprisingly, concern matters contained in the trial transcripts. It was therefore incumbent on Respondent to file the portions of the state court record pertaining to Petitioner's claims.

Nevertheless, the error in failing to file the transcripts has now been cured because Respondent has filed what appears to be the complete trial record. See Dkt. 64. The Court has now had an opportunity to review Petitioner's claims in light of the trial record. Though the trial court's statement of facts does seem to be a copy of a statement of facts submitted by the prosecutor, see Dkt. 47-2, after review of the trial record, the Court concludes that

it accurately summarized the trial proceedings, and it does not constitute an unreasonable determination of the facts contrary to § 2254(d)(2).

The Court finds that the failure to file the trial transcripts does not provide a basis for relief because, for the reasons that follow, none of Petitioner's claims merit relief in light of the trial record.

B. Jury Oath

Petitioner argues that the Court incorrectly determined that his appellate counsel was not ineffective for omitting a claim that the trial court failed to administer the jury oath prior to trial. The parties agree that the transcripts do not indicate that the jury was administered an oath prior to trial. It does not follow, however, that Petitioner is entitled to relief on this claim.

First, as an independent federal claim, there is no clearly established Supreme Court law requiring reversal where, absent an objection, a jury is not admitted an oath prior to a criminal trial. See, e.g., *United States v. Turrietta*, 696 F.3d 972, 982 (11th Cir. 2012) ("No federal court in the history of American jurisprudence has held the constitutional guarantee of trial by jury to necessarily include trial by sworn jury.").

Next, as the predicate to an ineffective assistance of appellate counsel claim, the argument fairs no better. In *People v. Cain*, 498 Mich. 108 (2015), the Michigan Supreme Court held that it was not plain error requiring a new trial where the jury was not properly sworn before it deliberated to a guilty verdict in a criminal case absent objection. *Cain* overruled other Michigan cases, such as *People v. Allen*, 299 Mich. App. 205, 219 (2013), on which Petitioner relies. Whether or not the claim would have found support under Michigan law at the time of his direct appeal, Petitioner cannot demonstrate that he has

suffered prejudiced under the *Strikcland* standard by his appellate counsel's failure to raise the issue because the claim is without merit in light of the current state of the law. See *Lockhart v. Fretwell*, 506 U.S. 364, 373 (1993).

Finally, the claim fails for the reasons stated in the Court's initial opinion denying habeas relief. Appellate counsel raised substantial claims during Petitioner's direct appeal. His decision to raise those claims in favor of an unpreserved jury oath claim did not constitute deficient performance. See *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

C. Trial Court's Comments

Petitioner asserts that the trial transcripts support his claim that the trial court made comments throughout trial indicating his bias. In the initial opinion denying the petition, the Court examined this claim in light of the statement of facts contained in the state trial court's opinion. See Dkt. 56, at 14-15. The Court has now had the opportunity to review the allegations of bias in light of the actual trial record. A review of the record confirms the accuracy of the state trial court's statement of facts, and it confirms the Court's finding that the challenged remarks amounted to nothing more than expressions of "impatience, dissatisfaction, or annoyance," not meriting relief. See *Liteky v. United States*, 510 U.S. 540, 555 (1994). This claim is without merit.

D. Limitations Placed on Cross Examination

Petitioner argues that the trial record shows that he was not allowed to examine a document used to refresh the recollection of prosecution witness Carrol Payne, and therefore he was unable to cross examine the witness regarding the document.

Again, review of the trial transcripts confirms the Court's assessment of the claim. During direct examination of Payne, the prosecutor asked the witness whether she

remembered telling him about overhearing a statement co-defendant Holloway made. Dkt. 64-21, at 1119. The prosecutor showed the witness a piece of paper in an effort to refresh her recollection. Id. Defense counsel objected, and the prosecutor indicated that he was using "notes of our conversation." Id., at 1120. The trial court allowed the witness to read part "11(d)" of the notes. Id., at 1121-22. Defense counsel objected that they were not permitted to examine the entire document. Id. The Court indicated that it only allowed the witness to read "11(d)" and that portion was made available to defense counsel. Id., at 1122-23.

Accordingly, a review of the record does not alter the Court's analysis of the claim. Contrary to Petitioner's argument, the defense attorneys were permitted to examine the portion of the document shown to the witness, and they were therefore not prohibited from cross-examining the witness on that basis.

E. False Testimony

Petitioner argues that the Court misapprehended his claim that the prosecutor knowingly offered the false testimony of prosecution witness Payne regarding statements she heard made by co-defendant Smith in Petitioner's presence. Petitioner asserts that Payne could not have heard Smith say on December 4, 1973, that "they found the box, the bullet, the box container in which the bullets were in, in the garbage disposal," because the search of Petitioner's apartment did not occur until December 5, 1973.

Again, a review of the transcripts confirms the Court's initial assessment of this claim as being without merit. Payne testified that she heard Smith's statements after he was watching coverage of the murders on the evening news. Dkt. 64-21, at 1138. Smith was also holding a newspaper. Id., at 1140. Payne described Smith as being angered by the

news coverage, that the "newspaper told lies," had the facts wrong, and that the family got what they deserved because they had the money to pay the ransom. Id., at 1178. Payne then heard Petitioner respond to Smith's statements by stating, "Man, I've been telling them all day that we had nothing to do with it, and now you come in here and blow it all." Id., at 1180. The content of Smith's statement was not offered for the truth of the matter asserted against Petitioner. Rather, it was the fact that after hearing Smith's statements about the crime (whatever they were) that Petitioner responded by essentially admitted guilt by stating that Smith had just "blown it" that provided incriminating evidence against Petitioner.

In any event, Petitioner has failed to demonstrate that the prosecutor knew Payne's testimony to be false with respect to her recollection of the contents of Smith's statement. See *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). Payne may or may not have accurately recalled the particular contents of Smith's incriminating statements. Even if the box was not actually recovered until the day after Payne recalled the statement being made, the prosecutor had no way of knowing whether Payne was testifying in accordance with her honest recollection of what Smith said. Again, Payne was not testifying about when and where pieces of evidence were actually found, she was merely relating her recollection of Smith's statements regarding the crime, which prompted an incriminating response by Petitioner. This claim is simply not supported by the record.

F. Failure of Appellate Counsel to Raise Evidentiary Claim

Petitioner claims that the Court failed to discuss his claim that his appellate counsel was ineffective for failing to raise an issue regarding admission of evidence of Petitioner's poverty. This argument is incorrect. The Court explicitly addressed and rejected this claim. Dkt. 56 at 19. Petitioner does not present any argument as to why the Court's analysis is

erroneous.

G. Evidence of Petitioner's Silence

Petitioner next argues that the Court erred in its analysis of his claim that the trial court erroneously admitted evidence of Petitioner's silence at the time of his arrest.

The prosecutor asked Jacqueline Wesley on direct examination about what occurred when the police arrived at an apartment to arrest Petitioner. Dkt. 64-18, at 618. Wesley testified that after she heard a knock at the door, Petitioner grabbed his pistol and went to the front of the apartment. Id., at 619. When he returned, Wesley testified that Petitioner said, "'Dammit, the police. . . . Byron snitched.' Then he came toward me with the pistol. Then Geary said, 'Bitch, if you say one word,' he said 'I'll kill you.'" Id.

Wesley testified that the police then forced their way into the apartment, they said something about the pistol, "and Geary didn't say anything to them." Id. The prosecutor again asked what happened when the police inquired about the pistol, and Wesley responded that "Geary didn't say anything to them." Id., at 620.

The officer involved in the arrest, Michael Hall, testified that he went to the apartment to arrest Petitioner. Dkt. 64-29, at 2494. He testified that after Petitioner shut the door on him, he kicked it in. Id., at 2494-95. Petitioner was wearing an empty holster around his waist. Id., at 2495.

While the record does not definitively reveal when Petitioner was informed of his Fifth Amendment rights, the trial accounts of his arrest indicate that the police asked Petitioner about the pistol immediately upon entering the apartment. Under these circumstances, the prosecutor was permitted to elicit testimony regarding Petitioner's failure to respond to the question. See *Fletcher v. Weir*, 455 U.S. 603, 606 (1982) (per curiam)

(post-arrest statements made before warnings are given may be commented upon by prosecutor, noting that the Court has "consistently explained *Doyle* [*v. Ohio*, 426 U.S. 610, 618 (1976)] as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him."); see also *Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993) (citing *Fletcher* and upholding use of a defendant's post-arrest silence).

Moreover, in *New York v. Quarles*, 467 U.S. 649 (1984), the Supreme Court found that police officers are permitted to ask questions of a suspect necessary to protect themselves or the public from immediate danger during an arrest prior to informing the suspect about his Fifth Amendment rights. Here, when officer Hall entered the apartment he encountered a person suspected of murder who was wearing an empty holster. Questioning Petitioner about the whereabouts of the missing firearm was clearly necessary to protect himself from the threat of immediate danger. This claim is without merit.

H. Illegal Search

Finally, Petitioner contends that the Court incorrectly denied his claim that his appellate counsel was ineffective for failing to raise a Fourth Amendment challenge on the basis that the police used false statements in an affidavit for a search warrant.

Contrary to Petitioner's assertions, his claim is based on *Franks v. Delaware*, 438 U.S. 154 (1978). *Franks* was not available to Petitioner's appellate counsel when he presented Petitioner's Fourth Amendment claim during Petitioner's direct appeal. As indicated in the Court's initial Opinion, the state trial court held a four-day evidentiary hearing on the legality of the search at issue and denied relief. Petitioner's appellate counsel then raised the challenge again on direct appeal based on existing precedent, and

the Michigan Court of Appeals rejected the claim on the merits. *Gilmore*, 73 Mich. App. 463, 472 (1977). Appellate counsel did not perform deficiently in the manner he presented this issue to the state appellate courts. The claim is therefore without merit.

### III. Certificate of Appealability

Nothing in Petitioner's motion or in the trial court record alters the Court's conclusion that Petitioner is not entitled to a certificate of appealability with respect to any of his claims. The resolution of his claims is not reasonably debatable. See 28 U.S.C. § 2253(c); Rule 11, Rules Governing Section 2254 Proceedings. The Court will, however, grant permission to appeal in forma pauperis because any appeal of this decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

### IV. Conclusion

Accordingly, the Court 1) **GRANTS** Petitioner's motion to amend [Dkt. 62], 2) **DENIES** Petitioner's motion to make additional findings under Rule 52(b) [Dkt. 58], 3) **DENIES** a certificate of appealability, and 4) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

s/ Nancy G. Edmunds
Honorable Nancy G. Edmunds
Dated: November 1, 2016          United States District Judge